

# Forensic Research + Analysis

April 28, 2021

Steven A. Shapiro, Esq.
Ogborn Mihm, LLP
1700 Lincoln Street, Suite 2700
Denver, CO 80203

RE: *Ralph Mitchell and Jody Mitchell v. William E. Rosenthal*

Plaintiff:             Ralph Mitchell
Date of birth:         December 15, 1960
Date of Incident:      June 27, 2017 (age 56 years at the time of crash).

Dear Mr. Shapiro,

I am in receipt of your correspondence and materials regarding above-named action, concerning Mr. Ralph Mitchell and injuries he sustained in a scooter crash. My report in this matter includes my analysis of the methods and opinions provided by the defendant's experts Dr. J. Michio Clark (biomechanical engineer) and Zachariah Weimer (senior engineer), in a report dated April 8, 2021, in which they opine that the subject scooter crash did not have the capacity to cause Mr. Mitchell's head injury.

*My qualifications to provide opinions concerning the matters herein, particularly on issues of the causal relationship between trauma and injury, are as follows:*

I am a consultant in the fields of forensic medicine and forensic epidemiology, and hold qualification as a member of the Faculty of Forensic and Legal Medicine (FFLM) of the Royal College of Physicians (UK). I hold the following relevant academic degrees and certifications: a doctor of medicine degree (Med.Dr.) from Umeå University, a doctor of philosophy (Ph.D.) in public health/ epidemiology from Oregon State University, a master of public health (MPH) in epidemiology and biostatistics, also from Oregon State University, a master's degree in forensic medical sciences (MScFMS) with the Academy of Forensic Medical Sciences in the United Kingdom, *i.a.* In addition to my degreed education, I have completed a 2-year post-doctoral fellowship in forensic pathology at Umeå University in Sweden, and hold a Diploma of Legal Medicine (DLM) with the FFLM. I am a fellow of both the American Academy of Forensic Sciences and the American College of Epidemiology. I am also a Fulbright Fellow, and held a 3-year roster appointment (2017-20) with the United States Department of State as a Fulbright Specialist in the field of forensic medicine.



EXHIBIT
7

Steven A. Shapiro, Esq.

RE*: Ralph Mitchell and Jody Mitchell v. William E. Rosenthal*

April 28, 2021

Page 2 of 9

I serve as tenured Associate Professor of Forensic Medicine at Maastricht University, and a joint Clinical Professor of Psychiatry and Public Health and Preventative Medicine at Oregon Health and Science University School of Medicine, where I have taught courses for the past >20 years in forensic medicine, forensic epidemiology, and injury epidemiology. From 2005-2017 I held an appointment as an Adjunct Professor of Forensic Medicine and Epidemiology at the Institute of Forensic Medicine, Faculty of Health Sciences, Aarhus University, Aarhus, Denmark, and am a visiting professor at University of Indonesia in the Faculty of Medicine.

I have been a crash reconstructionist since 1996, and have had ACTAR accreditation (the Accreditation Commission on Traffic Accident Reconstruction) since 2005. Over the past >20 years I have participated in the reconstruction of more than 2,000 crashes, including more than 300 fatalities. Since 1999 I have served as a vehicular homicide investigator for law enforcement (consultant to the state medical examiner and special deputy sheriff), and I am currently an affiliate medical examiner with the Allegheny County Medical Examiner's office.

I have more than 60 scientific publications pertaining to injury biomechanics, including a book for the Society of Automotive Engineering, and taught injury biomechanics in a faculty peer-reviewed course at OHSU for 15 years. I have served as a consultant on injury biomechanics to state and federal government.

I serve or have served as an associate editor or editorial board member of 14 scientific peer-reviewed journals, and was the co-founder and co-editor in chief of the Journal of Whiplash and Related Disorders. I have published approximately 220 scientific papers, abstracts, book chapters and books on topics that include traffic crash injuries, crash reconstruction, injury causation and injury biomechanics, including the recent text for Elsevier, <u>Forensic Epidemiology: Principles and Practice</u> (2016). My publications have been cited by other authors approximately 3,000 times.

I have provided testimony in more than 350 civil and criminal trials in state and Federal courts throughout the United States, Canada, and Australia. Please see my CV for further details.

Steven A. Shapiro, Esq.

RE*: Ralph Mitchell and Jody Mitchell v. William E. Rosenthal*

April 28, 2021

Page 3 of 9

### ***Relevant facts:***

Mr. Mitchell was an unhelmeted rider involved in car vs. scooter crash on June 27, 2017. He was 56 years old at the time. His scooter was struck on the right and he was ejected and knocked to the roadway, landing on his left side, and striking his head on the pavement. He remained conscious after the crash, but felt a little confused.

EMS were summoned to the scene, and Mr. Mitchell transported to the ED. Examination in the ED identified a small hematoma at the upper posterior scalp region, and abrasions on the left elbow. He was dizzy and lightheaded. His Glasgow Coma Score measured 15.

Mr. Mitchell underwent a CT scan of the chest, abdomen and pelvis which revealed a mildly displaced posterior right seventh rib and nondisplaced right eighth rib fractures; tiny posterior right pleural gas collection (related to the fractures); and small amount of free fluid in the deep right pelvic cul-de-sac.

CT scans of the head and cervical spine and radiographs of the left hip were negative for acute pathology. Mr. Mitchell was diagnosed with multiple rib fractures (right), and small right posterior pneumothorax.

On July 3, 2017, 6 days after the crash, Mr. Mitchell presented to Surgical Specialists of Colorado with complaints of brain fog. He was referred for a head injury evaluation with an occupational therapist.

On July 12, 2017, Mr. Mitchell presented to Dr. Kimball Spence (family medicine). His cognition was improving but he still felt foggy. Dr. Spence diagnosed concussion, left trochanteric bursitis and multiple rib fractures (closed).

On July 13, 2017 Mr. Mitchell underwent a physical therapy evaluation. He was unable to perform a balance test or recall certain words on a brief cognition screening assessment. Mr. Mitchell underwent therapeutic modalities through September 7, 2017. He attended speech therapy, also.

Mr. Mitchell's cognitive issues persisted, particularly with short-term memory, word finding, difficulty learning new skills, repeating himself and failing to recognize familiar people and places.

Concerned for persistent post-concussion syndrome symptomatology, Dr. Spence referred Mr. Mitchell to neurology, and he was subsequently referred for neuropsychological evaluation following consult on November 2, 2017 with Whitney Scurlock PA-C to Dr. Jeffrey Siegel (neurology).

Steven A. Shapiro, Esq.

RE*: Ralph Mitchell and Jody Mitchell v. William E. Rosenthal*

April 28, 2021

Page 4 of 9

On November 22, 2017 Mr. Mitchell underwent a brain MRI which identified some non-specific T2 hyperintense foci in the hemispheric white matter (within normal limits for age) and interpreted as essentially normal.

On January 15, 2018 Mr. Mitchell presented to Dr. Dale Bowen (neuropsychology). Mr. Mitchell demonstrated a significant weakness in verbal memory, weakness in immediate memory associated with the ability to concentrate and maintain focus. He diagnosed mild neurocognitive disorder most likely secondary to traumatic brain injury (TBI).

A subsequent visit to Dr. Bowen on October 4, 2018 identified persisted cognitive impairment with mild depression.

On April 25, 2019 Dr. Kathryn Green (ENT) diagnosed Mr. Mitchell with *central* sleep apnea.

On June 11 and September 16, 2019 Mr. Mitchell presented to Dr. Stephen Schmitz (neuropsychology). He demonstrated deficits in cognition consistent with TBI, signs of significant emotional distress (for which he underwent counselling September through November 2019) and mild depression. Dr. Schmitz considered Mr. Mitchell's brain condition permanent.

On August 5, 2020 Mr. Mitchell underwent an evaluation for a rehabilitative program to address persistent imbalance and dizziness. He commenced vestibular physical therapy the following month.

On September 10, 2020 Mr. Mitchell underwent a DTI/MRI of the brain which revealed findings consistent with proximal vessel disease/microvascular changes of aging, possibly secondary to shearing injuries; and partial empty sella.

On November 11, 2020 Mr. Mitchell presented to Dr. Jonathan Woodcock (neurology) who noted post-concussive syndrome with principally cognitive and balance symptoms; memory dysfunction following head trauma, central and obstructive sleep apnea; and adjustment disorder with mixed anxiety and depressed mood.

On January, 2021 Mr. Mitchell began speech therapy with Dr. Ramya Shyam (cognitive therapist/language pathology) who diagnosed cognitive communication disorder secondary to the post-concussive injury sustained in the subject crash.

*Pre-crash medical history*
Meniere's (right) since 1995 (the frequency of which diminished to once yearly episodes in the 5 years prior to the subject crash and were usually associated with stress). The symptoms (vertigo and

Steven A. Shapiro, Esq.

RE*: Ralph Mitchell and Jody Mitchell v. William E. Rosenthal*

April 28, 2021

Page 5 of 9

nausea but never imbalance) were treated, on occasion, with steroid medication); often an onset of hearing loss, right ear, would indicate the onset of an episode

On February 13, 2016, Mr. Mitchell fell on his back while snowboarding. He also struck his head (he was wearing a helmet) but did not lose consciousness. He was a little dizzy and sick after the fall and was subsequently diagnosed with a possible concussion.

Obstructive sleep apnea since November 2016.

On February 28, 2017, 4 months prior to the crash, Mr. Mitchell underwent a well-person check, performed by Dr. Kimball Spence (family medicine). Dr. Spence believed Mr. Mitchell demonstrated normal neurologic/mental status.

Height 5 feet 10 inches
Weight approximately 190 lbs.

**Materials reviewed:**
In forming my opinions in this matter, I have reviewed the following case-specific documents:
- Colorado Traffic Crash Report.
- EMS records.
- Aspen Valley Medical Records.
- South Valley Physical Therapy.
- Colorado Concussion Clinic, Dr. Ramya Shyam.
- Scooter photographs.
- Vector Scientific (defendant experts) report dated April 8, 2021.
- Plaintiff expert reports:
  - Dr. Ramya Shyam's report (cognitive therapist and language pathologist)
  - Dr. Jonathan H. Woodcock's report (neurology).
  - Dr. Jeffrey Siegel's report (neurology).
  - Dr. Kimball Spence's report (family medicine).
  - Anne Stadola's report (Stodola Engineering Limited)
  - Dr. Stephen P. Schmitz's report (neuropsychology).
  - Dr. Lynn Hellerstein and Dr. Amy Elsila's report (optometrists).
  - Dr. Lauren Rust's report (physical therapy).

Steven A. Shapiro, Esq.

RE*: Ralph Mitchell and Jody Mitchell v. William E. Rosenthal*

April 28, 2021

Page 6 of 9

***Analysis of defendant's bioengineering expert opinions:***

In their report dated April 8, 2021, Dr. Clark and Mr. Weimer (henceforth "defense experts" for brevity) provided opinions regarding their analysis of the forces of the subject crash, and the likelihood that it caused Mr. Mitchell's *immediately apparent* closed head injury. Remarkably, the defense experts concluded that the forces of being ejected from a scooter at moderate speed and striking the pavement with one's unhelmeted head *could not have caused a concussion.* Aside from the patent *prima facie* absurdity of the opinion given the uncontested facts, the claimed foundations for the opinion establish a high point of junk science methods.

All of the opinions regarding a putative "threshold" of injury by the defense experts are derived from studies of National Football League (NFL) player head impacts. The experts cited to a study by Karton et al.[1], as the primary basis for their calculation of Mr. Mitchell's probability of concussion in the crash, using a range of maximum principal strain (MPS) values claimed from drop tests of a crash test dummy head. They asserted that "*if an impact to the rear of the head occurred in the subject accident, the probability of a concussion being above 50% cannot be ruled out from an injury biomechanics perspective.*"

This language choice is telling; injury biomechanics can't **ever** be used to rule out an injury that has been observed after a traffic crash; this is well established by language from the authoritative Society of Automotive Engineering publication (J885) that summarizes human injury tolerance threshold data for use in government crash testing:[2]

> "*Such [injury tolerance] specifications are beyond the state-of-the-art in biomechanics except perhaps for a few academic situations. There are several difficulties which prevent a ready establishment of human tolerance levels. First, there are differences in judgment as to the specific degree of injury severity that should serve as the tolerance level. Second, large differences exist in the tolerances of different individuals. It is not unusual for bone fracture tests on a sample of adult cadavers to show a three-to-one load variation. Presumably, variations of at least this magnitude exist in the living population. Finally, most tolerance levels are sensitive to modest changes in the direction, shape, and stiffness of the loading source. The above considerations indicate that complete and precise definitions of human tolerance levels will require large amounts of data based on controlled statistical samples. Only in this way can the influence of age, size, sex, and weight be comprehensively assessed and only in this way can mean loads and statistical measures of scatter be linked to specific tolerance levels.*"

---

[1] Karton, C., T.B. Hoshizaki, and M.D. Gilchrist, A novel repetitive head impact exposure measurement tool differentiates player position in National Football League. Scientific reports, 2020. 10(1): p. 1-14.

[2] Human tolerance to impact conditions as related to motor vehicle design. SAE J885 2011

Steven A. Shapiro, Esq.

RE: *Ralph Mitchell and Jody Mitchell v. William E. Rosenthal*

April 28, 2021

Page 7 of 9

Unsurprisingly, the title of the paper cited by the defense experts for their "50%" probability of concussion value is "*A **novel** repetitive head impact exposure measurement tool differentiates player position in National Football League*" (emphasis added). The study has nothing to do with assessing concussion thresholds in the unhelmeted population of 56 year-old men who sustain a relatively high speed ground level fall against pavement. Epidemiologic study has already established such falls as potentially fatal, and capable of causing skull fractures and serious brain and spinal cord injury.[3,4] The specious methods used by the defense experts to arrive at the opinion that Mr. Mitchell's concussion didn't happen because it was less than 50% probable does not eradicate that actual science on the topic, which stems from observational epidemiologic studies of what happens when people fall at ground level and strike their head, and NOT from "novel" methods for assessing concussion amongst various football player positions amongst some of the most elite athletes in the world.

Another interesting feature of the defense experts' approach is the claim that their dummy-derived "MPS" assessment had to exceed the 50% injury risk threshold in order for them **not to reject** the crash-related head-to-pavement impact as the cause of Mr. Mitchell's undeniable and immediately apparent head injury. It is clear that the defense experts have confused the legal standard for what is reasonably probable (>50% probable), with the concept of risk. If a person dies after a traffic crash that only carries a 1% risk of death, this does not mean the crash did not cause the death, because the person had a far lower risk of death in the absence of the crash, at the same point in time. Thus, when used to assess causation, risk is always used as a relative, rather than absolute measure. Even if the chance that Mr. Mitchell could possibly be stated to be at less than 50% risk of concussion from the subject crash (which it cannot), the chance he would have a concussion in the absence of the crash, but at the same point in time, is 0%. Thus, there is a 100% probability that the concussion observed in Mr. Mitchell arose from his crash-related head impact, regardless of meaningless numbers the defense experts produced from a study of a novel method for evaluating NFL player head impacts.

Studies of concussions among helmeted football players have no relevance to human tolerance to head impact in non-football players for a variety of (what should be) obvious reasons, including the fact that football players represent a group of individuals at the lowest risk to concussion at a given head impact level due to the use of head protective gear and the physical durability and exceedingly high resistance to injury required to play football at the highest competitive levels. Another important limitation of these studies is the small number of subjects followed, a factor that increases the random

---

[3] Chen Y et al. Fall-induced spinal cord injury: External causes and implications for prevention. J Spinal Cord Med. 2016;39(1):24–31.

[4] Freeman MD, Eriksson A, Leith W. Head and neck injury patterns in fatal falls: epidemiologic and biomechanical considerations. *J Forensic Legal Med* 2014;21:64-70.

Steven A. Shapiro, Esq.

RE*: Ralph Mitchell and Jody Mitchell v. William E. Rosenthal*

April 28, 2021

Page 8 of 9

scatter (error) within the data. I have gone into this problem at some length in a number of peer-reviewed scientific publications.[5-7] Since 2003 there have been more than 40 publications describing an analysis of head impacts among helmeted athletes, primarily football players, and the concussion outcome of the impact. Several authors have used these data to model concussion risk in the general population for use in the defense of injury litigation, an application which has no legitimate basis in science.

### *Conclusions:*
The defense experts' assertion that the subject crash could or should not have resulted in Mr. Mitchell's head injuries is utterly lacking in a basis in generally accepted scientific methods and is at odds with the facts and the application of generally accepted causal methodology.

Causal evaluations for crash-related injuries do not require the imprimatur of an engineer in order to determine that an injury really occurred. Such a practice only exists in and for the defense of injury litigation. Governmental and academic institutions use biomechanical analysis of injury events to determine how a medically observed injury occurred, and never to determine whether the injury occurred.

The defense experts' methods in this case have contorted the definition and application of biomechanics as the discipline is used outside of litigation.

The preceding discussion is only a partial enumeration of the errors and misrepresentations of facts and science committed by the defense experts' in their analysis of the circumstances of the subject crash and the most likely cause of Mr. Mitchell's head injuries. I will be happy to provide a more comprehensive discussion upon request.

---

[5] Freeman MD, Kohles SS. Applications and limitation of forensic biomechanics; a Bayesian perspective. *J Forensic Legal Med* 2010;17:67-77.

[6] Freeman MD. Concussion risk associated with head impact; an analysis of pooled data from helmeted sports. *Proceedings of the 12th Annual Conference of the North American Brain Injury Society J Head Trauma Rehab 2015*;30(3):E72-3.

[7] Freeman MD. Concussion risk from helmeted sports; A reexamination of data and methods. *J Forensic Biomed* 2018;9:139. doi: 10.4172/2090-2697.1000139

Steven A. Shapiro, Esq.

RE*: Ralph Mitchell and Jody Mitchell v. William E. Rosenthal*

April 28, 2021

Page 9 of 9

The preceding opinions were given to a reasonable degree of medical and scientific certainty.

I reserve the right to alter or revisit my opinions in this matter should new information be brought to my attention.


Very truly yours,


Michael D. Freeman, MedDr, PhD, MScFMS, MPH, MFFLM, DLM, FACE
Associate Professor of Forensic Medicine
University of Maastricht Medical Center
Faculty of Health, Medicine, and Life Sciences
Maastricht University, Maastricht, Netherlands

Member, Faculty of Forensic and Legal Medicine, Royal College of Physicians (UK)
Fellow, American College of Epidemiology
Fellow, American Academy of Forensic Sciences