IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-00778-RBJ

RALPH MITCHELL and JODI MITCHELL,

    Plaintiffs,

v.

WILLIAM E. ROSENTHAL,

    Defendant.

## ORDER on MOTION FOR RECONSIDERATION

    Plaintiffs move for reconsideration of an order verbally issued during a telephonic discovery dispute hearing. For the reasons set forth herein, the Court grants the motion.

### I. BACKGROUND

    On June 27, 2017, Ralph Mitchell was hit by a car while riding his scooter through downtown Aspen, Colorado. He claims to have sustained a traumatic brain injury in addition to other injuries. William E. Rosenthal, the driver, has admitted that he caused the accident, but he denies that it caused the extent of injuries and damages claimed by the Mitchells. The case is set for a 10-day jury trial beginning on April 18, 2022.[1]

    On December 22, 2021 the Court conducted a telephonic hearing concerning a discovery dispute. The hearing concerned drafts of the reports of plaintiffs' expert witnesses. During depositions of the experts defense counsel learned, at least as counsel perceived it, that plaintiffs'

---

[1] There is one civil case set for trial on the Court's docket on the same day that has priority over this case. We will let you know if that setting changes.

1

counsel drafted the reports for the experts and sent drafts back and forth until the expert and counsel were satisfied. Defense counsel requested that the drafts be produced, asserting that anything provided to an expert for his or her review in the preparation of an expert report is discoverable. Plaintiffs' counsel responded that the rules provide specific protection against discovery of drafts of expert reports.

The Court ordered plaintiffs to produce the drafts. Plaintiffs moved for reconsideration of that order. Both sides provided briefing. The Court directed plaintiffs to provide copies of the drafts and correspondence between the experts and counsel for an *in camera* review. ECF No. 46. The documents have been provided to the Court, and I have reviewed them.

## II.  LEGAL STANDARDS

If a person is retained to provide expert opinion testimony, the retaining party must produce a written report signed by the witness setting forth the witness's opinions, the basis and reasons for the opinions, and certain other information about the witness's investigation, background, and compensation. Fed. R. Civ. P. 26(a)(2)(B)(I). Experts not retained to provide expert testimony but who actually participated in the underlying facts giving rise to the case are not required to prepare a written report. However, the party calling the witness must provide a written disclosure that includes a complete description of the witness's opinions and the basis and reasons for the opinions. If the non-retained witness does prepare a written report, it must be signed by the witness. If he or she does not prepare a report, then counsel may prepare and sign the disclosure. Rule 26(a)(2)(B)(II).

The discovery rules provide protection from discovery for certain trial preparation materials. Rule 26(b)(3). That protection extends to drafts of expert reports and disclosures. Rule 26(b)(4)(D). It also extends to communications between a party's attorney and the expert

with the exception of communications relating to the expert's compensation; identification of "facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed;" and identification of "assumptions that the party's attorney provided and the expert relied on in forming the opinions to be expressed." Rule 26(b)(4)(D)(i-iii). Rule 26(b)(4) was modified in 2010 "to provide work-product protection against discovery regarding draft expert disclosures or reports and – with three exceptions – communications between expert witnesses and counsel." Fed. R. Civ. P. 26 advisory comm. n. (2010).

My understanding during the telephonic hearing was that the question presented concerned drafts of expert reports prepared by counsel and provided to the expert for review, revision, and ultimately for signature. It turns out that that understanding was not entirely correct. The subject experts are non-retained experts. Their opinions could be disclosed in writings prepared by counsel. In this case, however, the disclosures took the form of reports of these individuals.

The foregoing rules do not expressly address that situation. Nor does there appear to be much case law on point. Defendant cites *Oklahoma v. Tyson Foods, Inc.,* No. 05-cv-329-GFK-PJC, 2009 WL 1578937 (N.D. Ok. June 2, 2009), in which the court stated,

> '[D]raft expert reports prepared by counsel and provided to testifying experts, and attorney-expert communications that explain the lawyer's concept of the underlying facts, or his view of the opinions expected from such experts, are not entitled to protection under the work-product doctrine.'

*Id.* at *4 (quoting *Elm Grove Coal Co. v. Director, O.W.C.P.,* 489 F.3d 278, 302-03 (4th Cir. 2007)). However, the case pre-dates the 2010 amendments to Rule 26. And significantly, the expert report in question was that of a retained expert (who had been converted from his initial retention as a consulting expert). A retained expert can be expected to write his or her own report. The opinions of a non-retained expert, such as health care professionals who participated

3

in the treatment of an injured plaintiff, can be and frequently are disclosed in writings prepared and signed by counsel.

Defendant also points me to *Curtis v. Lever Up, Inc.,* No. 20-cv-01873-DDD-NYW, 2021 WL 5014497 (D. Colo. Oct. 28, 2021). The issue there concerned certain materials that counsel provided to a consulting expert in order to obtain the expert's advice, education, and assistance in the preparation of the case. As in *Oklahoma v. Tyson Foods,* the party later elected to identify the individual as a testifying expert. The court found that "anything received, reviewed, read or authored by the expert, before or in connection with the forming of his opinion if the subject matter relates to the facts or opinions expressed." was discoverable. *Id.* at 5 (citation omitted). However, that unsurprising conclusion does not address the situation presented here.

Plaintiffs direct my attention to an order issued by Magistrate Judge Hegarty, who expressed that "actual drafts of expert reports, whether authored by [the expert] or his co-authors or staff, are protected and need not be produced." *Republic of Ecuador v. Bjorkman,* No. 11-cv-01470-WJD-MEH, 2013 WL 50430, at *2 (Jan. 3, 2013). Likewise, notes prepared by counsel are protected. *Id.* at *3. But that case too did not address the situation we have here.

It seems to me that the answer to the question posed in this case, as so often happens, is "it depends." It depends on the specific context, including whether the expert was or was not a retained expert. Now that I have the actual expert disclosures, the deposition testimony, and the drafts of the reports, I have that context.

### III. FINDINGS

With the foregoing background, my findings and conclusions regarding the subject expert witnesses are as follows:

A. **Jeffrey Siegel, M.D.**

4

He is a neurologist and was disclosed as a non-retained expert under Rule 26(a)(2)(B)(II), but he signed an expert letter report. Plaintiff's motion states that the excerpt of his deposition is ECF No. 37-5. I note that in one place the excerpt references "developmental optometry," *id* at 3, which is the specialty of a different expert. However, Dr. Siegel's report does several times refer to visual issues and problems. Moreover, the testimony in the excerpt appears to be consistent with my review of the draft and final reports, as indicated below. Therefore, I assume that the excerpt is indeed taken from Dr. Siegel's deposition.

The deponent testified that he wrote his report. ECF No. 37-5 at 1. Counsel initially had been offered a letter to submit, but the deponent testified, "I prefer to write my own letters. So, yeah, this was about 99 percent or 95 percent my effort." *Id.* at 2. There was no substantial difference between counsel's letter and the one he drafted, but "I just wanted it in my own words . . . . I don't want people writing letters for me." *Id.*

I have reviewed Dr. Siegel's letter report dated April 9, 2021. I have also reviewed *in camera* the draft report authored by counsel and the email correspondence between the witness and counsel, all as provided by Lucas Granillo on February 16, 2022. The correspondence and draft appear to indicate that counsel prepared a draft based on information provided by Dr. Siegel. There is no doubt that the overall contour of the final report tracks the draft prepared by counsel, but Dr. Siegel modified it as he deemed appropriate. I find nothing to indicate that counsel exerted improper influence in the preparation of the final report. As I have indicated, plaintiff could have provided a disclosure with similar detail written by counsel. The fact that it was instead put into the form of a letter report that was reviewed, modified, and signed by the expert if anything enhances the disclosure, but it does not convince me that the draft must be produced.

B. <u>Ramya Shyam, CCC-SLP</u>.

She is a speech-language pathologist with expertise in cognitive rehabilitation. She was disclosed as a non-retained expert under Rule 26(a)(2)(B)(II), but she signed an expert report. When shown a copy of her report during her deposition she characterized it as an expert disclosure of her anticipated testimony. ECF No. 37-3 at 4. She acknowledged that counsel had drafted a disclosure after talking with her about her opinions. She testified that she modified the draft to make it accurate, such as by deleting references to testing since she had not done any testing. *Id.* at 2-3, 5-9.

I have reviewed Ms. Shyam's undated but signed report; the undated but signed draft; and correspondence with counsel, as provided by Mr. Granillo. Although I might have missed it, I did not find any difference between the draft and the final. That is not consistent with the correspondence or the deposition excerpt, both of which indicate that she made modifications concerning testing. The correspondence also indicates that she made changes to describe certain aspects of her treatment more clearly and to omit things that were not within her scope. There must be a mistake here somewhere.

C. <u>Lauren Rust, PT, DPT, OCS</u>.

She is a physical therapist with expertise in post-concussion treatment. She was disclosed as a non-retained expert under Rule 26(a)(2)(B)(II), but she signed an expert report. She discussed the format and the significance of an expert report with counsel. ECF No. 37-4 at 7. She spoke with counsel on the phone four times before she drafted her report. *Id.* She had a fifth telephone conference with counsel before she prepared a rebuttal report. *Id.* at 8. Counsel sent her a rough draft of her report, but she rewrote it "to more accurately reflect my thought process, my objective findings, my assessment." *Id.* at 11. "Their understanding of the medical

6

side of it was inaccurate." *Id.* at 12. "[T]heir understanding of visual motion hypersensitivity was inaccurate. " *Id.* She also took out some of the verbiage at the end. *Id.* at 13.

I have reviewed the documents provided by Mr. Granillo. Counsel solicited Dr. Rust's input regarding a disclosure of her opinions and provided a draft written in the format of a report. The final signed but undated report reflects that she made substantial changes. I am not sure why counsel wanted the final "report" to be a report signed by the witness rather than a disclosure signed by counsel, but I find that the witness did express her findings and opinions in the final version.

### D. Kimball Spence, D.O.

He specializes in family medicine and was disclosed as a non-retained expert under Rule 26(a)(2)(B)(II). In his deposition he described his "report" as a summary of his opinions that his staff sent out. ECF No. 37-6 at 2. Counsel told him the "types of things that would be helpful to put in a report like that," which included that he is a family physician, a summary of his practice, a summary of his interactions with Mr. Mitchell, a summary of what he knew about his health care before and after the accident, and a summary of his opinions. *Id.* at 3, 4. It was a "template," but "I clearly put in my opinions and my thoughts." *Id.* at 4. "I put my words in because I don't like someone else writing anything for me. I wrote it." *Id.* at 5. "The last paragraph are [sic] legal word. The rest of it is my words." *Id.* at 6. He stood his ground despite, in my interpretation, efforts of the examining counsel to describe the process otherwise. *See, generally, id.* at 3-6.

I have reviewed the final undated and unsigned report; the draft report; and the email correspondence, all as provided by Mr. Granillo. It is consistent with the deposition testimony.

Counsel provided a draft, but the witness substantially changed it before accepting the final version.

    E.  <u>Amy Elsila, O.D.</u>

She is a developmental optometrist and was disclosed as a non-retained expert under Rule 26(a)(2)(B)(II).  She and a colleague, Dr. Hellerstein, were referred for treatment of a traumatic brain injury, concussion, and visual consequences of those conditions.  In her deposition she testified that she drafted her report with assistance from Dr. Hellerstein.  ECF No. 37-7 at 1.  She acknowledged that counsel provided an initial draft, but "we scratched it and kind of started over, other than the last paragraph that had more of the legal terminology."  *Id.* at 5.  Counsel's draft was not inaccurate, but it did not explain her findings the way she wished to express them.  *Id.* at 5-6.

I have reviewed the final report dated April 6, 2021, signed by Dr. Elsila and Dr. Hellerstein; the draft; and the email correspondence between the two doctors and plaintiffs' counsel, as provided by Mr. Granillo.  The final report generally followed the format of the draft, but the witness(es) made significant changes, consistently with Dr. Elsila's deposition testimony.

### IV.  CONCLUSIONS

This dispute turned out to be much ado about very little.  Counsel drafted what in substance were disclosures of the opinions of non-retained expert witnesses, based on counsel's review of the medical records and conversations with the witnesses.  The disclosures were drafted in the format of expert reports.  The witnesses reviewed the drafts and, with the possible exception of Ms. Shyam as noted above, made changes as they deemed appropriate.  I would not expect these health care professionals to draft reports from scratch.  In this case, at least, they were in the business of treating the patient, not writing reports.  I have found no evidence that

counsel put them up to forming or expressing opinions that differed from the opinions they formed in the course of treatment. I do not find that there is a factual or legal basis to require disclosure of the drafts or the email correspondence to defendant's counsel in the circumstances.

## V.  ORDER

Accordingly, plaintiffs' motion for reconsideration, ECF No. 37, is GRANTED. The Court vacates its order requiring plaintiffs to produce copies of draft "reports" of these witnesses.[2]

DATED this 7th day of March, 2022.

BY THE COURT:

*/s/ Brooke Jackson*

R. Brooke Jackson
Senior United States District Judge

---

[2] In reviewing the file in connection with this dispute I see that defendants have filed lengthy motions to limit or exclude the opinions or portions of the opinions of plaintiffs' experts Rust, Shyam, Elsila, Woodcock, Clark, Weimer, and Stodola. *See* ECF Nos. 40, 41, 42 and 44. If any party wants an evidentiary hearing regarding any of these motions, please contact Chambers and set a hearing. Otherwise, the Court will, when it can, address these motions on the papers.